|  |  |
|---|---|
| 1 | O |

<br>

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| AVERY ARMANI, | ) CV 17-07814-RSWL-FFM |
|---|---|
| Plaintiff, | ) |
|  | ) **ORDER re: Plaintiff's** |
| v. | ) **Motion to Dismiss** |
|  | ) **Defendant's Counter-** |
|  | ) **Complaint** [13] |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a corporation; DOES 1 through 10, | ) |
| Defendants. | ) |

Currently before the Court is Plaintiff/Counter Defendant Avery Armani's ("Plaintiff") Motion to Dismiss Defendant/Counter-Claimant Northwestern Mutual Life Insurance Company's ("Defendant") Counter-Complaint ("Motion") [13]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Plaintiff's Motion.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff began working full time at Renaissance Insurance Agency, Inc. ("Renaissance") as a controller in November 2008. Def.'s Countercl. Against Pl. ("Countercl.") ¶ 6, ECF No. 10. Renaissance had an "employee welfare benefit plan," which included a long term disability ("LTD") policy. Id. ¶ 7. Defendant issued the LTD policy to Renaissance, and Plaintiff was a participant in this policy. Id. ¶¶ 7-8. Under the terms of the LTD policy, after an initial twenty-four months of disability payments, a person is "disabled" only if he is either (1) "[u]nable to perform with reasonable continuity the material duties of any gainful occupation for which [he is] reasonably fitted by education, training, and experience," or (2) "[u]nable to earn more than 80% of [his] Indexed Predisability Earnings." Id. ¶ 10. The policy additionally states that any disability benefit will be reduced by Income from Other Sources ("deductible income"), which is defined, in part, as "[o]ne-half the amount of your earnings from work while LTD Benefits are payable." Def.'s Opp'n to Pl.'s Mot. to Dismiss ("Opp'n") 10:2-4, ECF No. 15.

In May 2011, Plaintiff submitted a claim for LTD benefits. Id. at 1:16-17. Defendant approved Plaintiff's claim in July 2011 and closed his claim in July 2013. Id. at 1:17-18. Subsequently, Plaintiff

sued Defendant, and this Court issued a judgment in Plaintiff's favor on May 18, 2017. Countercl. ¶ 12. The Court ordered Defendant to reinstate Plaintiff to the LTD plan, pay Plaintiff all benefits and interest owed from the date his claim was closed in July 2013 to the date of the judgment, and pay benefits going forward until Plaintiff is no longer eligible to receive payments under the plan. Id. ¶ 13.

The day after the judgment, Defendant's counsel sent an email to Plaintiff's counsel requesting documentation of Plaintiff's deductible income from July 2013 to the present. Id., Ex. A. On May 24, 2017, Plaintiff's counsel responded to this email, stating that Plaintiff had "not been employed since he became disabled." Id., Ex. D. Defendant's counsel continued to follow up to request documentation confirming this statement. Id. ¶ 19. On June 16, 2017, the attorneys spoke on the phone, and Plaintiff's counsel again stated that Plaintiff had not earned any income since filing his disability claim and refused to provide Plaintiff's tax returns. Id., Ex. E.

On June 19, 2017, after Defendant's counsel discovered that Plaintiff was employed as the Director of Finance for Bolton & Company, Defendant's counsel emailed Plaintiff's counsel requesting Plaintiff's tax returns from 2013 through 2016. Id., Ex. G. In response, Plaintiff's counsel admitted that Plaintiff had been employed since April 2017. Id., Ex. H. In

3

light of the discovery that Plaintiff had been working, Defendant's counsel expanded the scope of their requests, asking for tax returns and accompanying schedules from 2010 through 2016 and year-to-date pay stubs for 2017. Id., Ex. J. Plaintiff eventually provided his 2012 through 2016 tax returns and two 2017 pay stubs, but he did not provide year-to-date 2017 pay information, 2010 through 2011 tax returns, or attachments such as W-2's and K-1's. Id. ¶ 26, Ex. K. The information Plaintiff did provide showed that he had been earning income since at least 2012. Id. ¶ 26.

On July 21, 2017, Defendant's counsel emailed Plaintiff's counsel informing him of the deficiencies in his document production, which prevented Defendant from accurately calculating the LTD benefits owed to Plaintiff. Id. ¶ 27. Defendant claims that Plaintiff's counsel did not respond. Id. ¶ 28.

Finally, on July 31, 2017, Defendant sent a letter to Plaintiff's counsel stating that Defendant had reopened Plaintiff's claim and, based on the documents Plaintiff provided, determined that Plaintiff was only eligible for disability payments up to December 31, 2015. Id., Ex. L. The letter further stated that Defendant had overpaid Plaintiff from July 2011 through July 2013 and Defendant had deducted such overpayment from the arrears payment, which covered July 2013 through December 2015. Id.
///

**B. Procedural Background**

On October 25, 2017, Plaintiff filed his Complaint [1] seeking additional LTD benefits. Defendant answered and filed a Counter-Complaint [10] on December 12, 2017, seeking relief under the theories of intentional misrepresentation, concealment, fraud, negligent misrepresentation, and equitable restitution under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). Plaintiff filed the instant Motion [13] on December 26, 2017, to which Defendant filed an Opposition [15] on January 30, 2018. Plaintiff then filed his Reply [16] on February 6, 2018.

## II. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss on 12(b)(6) grounds, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal quotation marks omitted). "Dismissal can be based on [a] lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).

The question presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief, thereby entitling the plaintiff to offer evidence in support of its claim. Iqbal, 556 U.S. at 678; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). While a complaint need not contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of a cause of action's elements." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citation omitted). However, "[a] complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Balistreri, 901 F.2d at 699 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

///

**B. Discussion**

    1. <u>Intentional Misrepresentation, Negligent Misrepresentation, and Fraud</u>

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage."[1] <u>Chapman v. Skype Inc.</u>, 162 Cal. Rptr. 3d 864, 875 (Ct. App. 2013)(citation omitted). "The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." <u>Cisco Sys., Inc. v. STMicroelectronics, Inc.</u>, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). Plaintiff's Motion only discusses the justifiable reliance and damages elements, so the Court will limit its analysis to these two elements.

        a. *Justifiable Reliance*

In his Motion, Plaintiff argues that "it is

---

[1] Fraud claims share these same elements. See <u>Lazar v. Supreme Court</u>, 909 P.2d 981, 984 (Cal. 1996)(citation omitted). Pursuant to Rule 9(b), to properly plead a fraud claim, a plaintiff must plead each element with particularity. <u>F.T.C. v. Lights of Am., Inc.</u>, 760 F. Supp. 2d 848, 850 (C.D. Cal. 2010). "This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" <u>Stansfield v. Starkey</u>, 269 Cal. Rptr. 337, 345 (Ct. App. 1990)(citations omitted).

impossible for the defendant to have reasonably relied on Mr. Armani's false statement of no employment." However, "the reasonableness of reliance on a misrepresentation is ordinarily a question of fact." Anschutz Corp. v. Merrill Lynch & Co., 785 F. Supp. 2d 799, 827 (N.D. Cal. 2011). Plaintiff essentially treats his Motion as a motion for summary judgment, and, while this Action may be ripe for summary judgment, such a motion is not currently before the Court.

The Court "must accept all material allegations in the complaint as true." Klarfeld, 944 F.2d at 585. Here, Defendant alleges that it "justifiably relied on the representations made by [Plaintiff] regarding his work activity, earnings/income, and his inability to work and/or perform certain related activities." Countercl. ¶ 35. Defendant alleges that Plaintiff's counsel, on behalf of Plaintiff, made statements regarding Plaintiff's employment status and the amount of income Plaintiff earned during the time Plaintiff claims he was disabled. Id. ¶¶ 17, 20. Defendant then took these statements into account when determining the amount of LTD benefits to pay Plaintiff. Id. ¶¶ 35-36. After construing these allegations "in the light most favorable" to Defendant, see Klarfeld, 944 F.2d at 585, Defendant's allegations are sufficient to withstand a motion to dismiss.

///

### b. *Resulting Damages*

Plaintiff argues that Defendant has failed to allege damages as a result of Plaintiff's misrepresentation. Mot. 3:1-2. However, Defendant's Counter-Complaint alleges that it is damaged because "it paid LTD benefits to [Plaintiff] to which he was not entitled." Countercl. ¶ 36. At the pleading stage, Defendant merely must plead the fact of damages, and there is no requirement that Defendant allege the amount of damage. See Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1171 (9th Cir. 2002)("[I]t is important to distinguish between uncertainty in the fact of damage and in the amount of damage."). Because Defendant has alleged that Plaintiff's misrepresentations regarding his employment and income earned during the time Plaintiff claims he was disabled resulted in an overpayment, Defendant has sufficiently pleaded the damages element of his claims.

Defendant has sufficiently pleaded his intentional misrepresentation, fraud, negligent misrepresentation and concealment[2] claims, and the Court **DENIES** Plaintiff's Motion as to these claims.

///

---

[2] Defendant's concealment claim is just another form of his fraud claim and is thus evaluated the same as Defendant's fraud claim for purposes of Plaintiff's Motion. See Sung v. Hamilton, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010)(treating a fraudulent concealment claim as fraud based on alleged failures to disclose information).

2. <u>Equitable Restitution Under ERISA § 502(a)(3)</u>

ERISA § 502(a)(3), as codified in 29 U.S.C. § 1132(a)(3), is a catchall remedial provision that authorizes a civil action

> "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

<u>Varity Corp. v. Howe</u>, 516 U.S. 489, 518 (1996)(quoting 29 U.S.C. § 1132(a)(3)). ERISA § 502(a)(3) acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." <u>Id.</u> at 490.

"[T]o state a cause of action under [ERISA § 502(a)(3)], an ERISA plan must 'demonstrate (1) that it is an ERISA fiduciary, and (2) that it is seeking equitable, rather than legal, relief.'" <u>Carpenters Health & Welfare Tr. v. Vonderharr</u>, 384 F.3d 667, 672 (9th Cir. 2004)(quotation omitted). Plaintiff does not dispute that Defendant is a fiduciary under ERISA. Thus, the only inquiry necessary to determine whether Defendant has stated a claim under ERISA § 502(a)(3)(B) is whether the relief that Defendant seeks is "equitable."

"The law has evolved in the ERISA context to support an equitable restitution claim to recover benefits" paid due to fraud or wrongdoing—resulting in ill-gotten gains. <u>Trs. ex rel. N. Cal. Gen. Teamsters</u>

Sec. Fund v. Fresno French Bread Bakery, Inc., No. CV F 12-0187 LJO BAM, 2012 WL 3062174, at *6 (E.D. Cal. July 25, 2012). "[T]o establish entitlement to the restitution of the alleged 'ill-gotten gains' in this case, plaintiffs must establish each of the elements of a common law fraud claim." Med. Benefits Adm'rs of MD, Inc. v. Sierra R. Co., No. CIV. S-06-2408 FCD D, 2009 WL 2868716, at *6 (E.D. Cal. Sept. 2, 2009). As noted above, Defendant has properly alleged a claim for fraud. At the pleading stage, that is sufficient to proceed with Defendant's claim under ERISA § 502(a)(3). Accordingly, the Court **DENIES** Plaintiff's Motion as to Defendant's claim under ERISA § 502(a)(3).

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED.**

DATED: March 21, 2018          /s/ Ronald S. W. Lew
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge